UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PROPERTY SEIZED FROM 1015 EAST CLIFF DRIVE, SANTA CRUZ CA 95062 ON MAY 14, 2008. | Case No. 13-mc-80172-JST |
| GOURMET EXPRESS, LLC, | **ORDER GRANTING MOTION FOR REPRODUCTION OF SEIZED PROPERTY** |
| Movant, | |
| v. | Re: ECF No. 7 |
| UNITED STATES OF AMERICA, et al., | |
| Respondent. | |

Gourmet Express, LLC ("Movant" or "Gourmet Express") has moved this Court pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for an order compelling the United States to reproduce documents the Internal Revenue Service ("I.R.S.") seized in a May 14, 2008 search. "Motion," ECF No. 7. Respondent, the United States, has opposed the motion. ("Opp."), ECF No. 12. The matter came for hearing on October 3, 2013.

I.  BACKGROUND

   A.  **Factual Background and Procedural History**

Robert Scully served as Gourmet Express' Chief Executive Officer from January 2008 until mid-2009. Motion, at 3:5-7; Opp., at 2:2-3. On May 14, 2008, the I.R.S. executed a search warrant and collected evidence at a personal residence owned by Scully in the Northern District of California in connection with a criminal investigation of Scully in the Western District of Texas. Motion, at 4:21-5:10; Opp., at 2:13-16. The warranted authorized the seizure of, *inter alia*, "Records related to federal income tax returns filed by ROBERT SCULLY and KEVIN SCULLY and Gourmet Express, LLC," "Records relating to Gourmet Express, LLC and its relationship with

product suppliers and their representatives including . . . Groupwel1 International (HK) Limited," and "Records pertaining to the business of Gourmet Express, LLC." Exh. A to Declaration of Witt W. Chang ("Chang Decl."), ECF No. 7-1.

The United States indicted Scully in the Western District of Texas in July 2010 for, among other things, tax evasion. See Superseding Indictment, United States v. Robert Warren Scully, et. al., Case No. 5:10-cr-00593-FB (W.D. Tex. Nov. 17, 2010), Exh. B to Chang Decl. The indictment contends that Scully concealed income for tax purposes by creating four shell companies controlled by relatives, including Groupwell International Limited ("Groupwell"), using them to inflate the cost Gourmet Express paid for food products, and siphoning off those excess costs. Id. at ¶¶ 9-21.

In September 2009, Groupwell filed a civil lawsuit against Movant Gourmet Express in the Western District of Kentucky seeking payment for the goods they supplied to Gourmet Express. Complaint, Groupwell International (HK) Limited v. Gourmet Express, LLC, Case No 4:09-cv-94 (W.D. Ky. Sep. 25, 2009), Exh. C to Chang Decl., at ¶¶ 1-10. Gourmet Express has filed counterclaims against Groupwell contending that they were involved in defrauding Gourmet Express. Verified Second Amended Answer to Amended Complaint and Counterclaims, Kentucky Action (W.D. Ky. Nov. 8, 2010), Exh. D to Chang Decl., ¶¶ 48-63. Gourmet Express now moves that the government reproduce the documents it seized in the May 14, 2008 search of Scully's home.

### B. Jurisdiction and Legal Standard

Under Rule 41(g) of the Federal Rules of Criminal Procedure, "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return . . . in the district where the property was seized." "Though styled as a motion under a Federal Rule of Criminal Procedure, when the motion is made by a party against whom no criminal charges have been brought, such a motion is in fact a petition that the district court invoke its civil equitable jurisdiction." United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162, 1172 (9th Cir. 2010) (en banc). "[T]he district court is required to balance four

discretionary factors to determine whether to allow the government to retain the property, order it returned or . . . craft a compromise solution that seeks to accommodate the interests of all parties." Id. at 1173. "These factors include: 1) whether the Government displayed a callous disregard for the constitutional rights of the movant; 2) whether the movant has an individual interest in and need for the property he wants returned; 3) whether the movant would be irreparably injured by denying return of the property; and 4) whether the movant has an adequate remedy at law for the redress of his grievance." Ramsden v. United States, 2 F.3d 322, 325 (9th Cir. 1993).

The court must consider these factors as a preliminary matter before assuming jurisdiction and determining the motion on the merits. "[A] district court must exercise 'caution and restraint' before assuming jurisdiction." Id. at 324. (quoting Kitty's East v. United States, 905 F.3d 1367, 1370 (10th Cir. 1990). "If the 'balance of equities tilts in favor of reaching the merits' of the Rule 41(g) motion, the district court should exercise its equitable jurisdiction to entertain the motion." United States v. Kama, 394 F.3d 1236, 1238 (9th Cir. 2005) (quoting Ramsden, 2 F.3d at 326).

Where the four factors, considered together, support the court's exercise of discretion, the court then determines "whether the government has shown a legitimate reason for retaining the property" and "whether the government's continued retention of the [property] is 'reasonable [] under all of the circumstances.'" Kriesel, 721 F.3d at 1145 (citing Ramsden, 2 F.3d at 326 (itself quoting the Advisory Committee Notes to Rule 41); see also Kardoh, 572 F.3d at 700 ("if jurisdiction is warranted, a court considers whether the government's retention of the property would be reasonable under all of the circumstances").

II.    ANALYSIS

    A.    Disregard of Movant's Constitutional Rights

The United States argues that this factor weighs against the Movant because the records were obtained in a lawful search, a fact that Movant does not dispute. But Rule 41(g) grants standing both to those aggrieved by an "unlawful search and seizure" as well as those aggrieved only by a "deprivation of property." Fed. R. Crim. Pro. 41(g); see also In re Singh, 892 F.Supp. 1, 3 (D. D.C. 1995) ("[former] Rule 41(e) was amended in 1989 to recognize the right of a property

owner to obtain return of lawfully seized property"). The fact that property was acquired in a lawful search does not bar application of Rule 41(g). The court assumes *arguendo* that this factor weighs against its exercise of discretion, but it is not dispositive.[1]

### B. Movant's Individual Interest in and Need for the Property

Movant has established that it has an interest in the property, since some of the documents record transactions entered into by Scully on Gourmet Express's behalf, and some documents were generated by Scully when he was CEO of the company. It has also established its need for the property, since it likely is directly relevant to its claims and defenses in the Kentucky Action.

The United States' opposition brief does not dispute that Movant has some interest in and need for the property, but it argues that "the property cannot be disclosed to Gourmet Express because of 26 U.S.C.§ 6103" (hereafter, "Section 6103"). Even assuming that this is a countervailing interest deserving of consideration, it does not demonstrate that the Movant lacks an interest in and need for the property. The Court therefore considers this to be an argument on the merits rather than an argument against the assumption of jurisdiction. See *infra* at II-D. This factor weighs in favor of the Court assuming jurisdiction.

### C. Irreparable Injury and Adequate Remedy

These two factors also support the Court assuming jurisdiction and deciding the motion. The United States suggests that the Movant has adequate remedies at law because it could subpoena the documents from Scully, who may have received them from the government in the criminal discovery process. It also argues that the Movant could wait to see if the information ends up being disclosed during Scully's criminal trial. However, fact discovery in the Kentucky Action closes in two weeks, and it seems unlikely that the documents will be produced by Scully in response to a subpoena before that time. The possibility that *some* information in the documents may come to light in the criminal trial is speculative, and the possibility that *all* of the information sought will be disclosed seems quite unlikely. The Court also notes that the Movant

---

[1] The Court notes, however, that even if the initial search respected the Movant's constitutional rights, a continuing unjustified retention of the material would not.

4

has been diligent in seeking to seek the information through means other than this motion. See Second Declaration of Witt W. Chang, ECF No. 15-1, at ¶¶ 2-3. Therefore, the Movant appears to lack any adequate remedy at law to avoid the irreparable injury that could occur if it is forced to defend itself in the Kentucky Action without access to information critical to its defense.

### D. Reasonability of Government's Retention of the Property

At least three of the four Ramsden factors weigh in favor of the court exercising jurisdiction, which suffices to establish that the Court may assume equitable jurisdiction over the motion. See Ramsden, 2 F.3d at 326. The balance of the equities tilts in favor of the Court assuming jurisdiction, since Movant has important interests at stake that would be harmed if the Court does not consider its request.

The Court now considers whether it would be "reasonable under all of the circumstances" for the United States to refuse to reproduce the documents.

#### 1. The United States' Legitimate Reason to Retain the Property

In the context of a criminal case, "a defendant's Rule 41(g) motion should presumptively be granted if the government 'no longer needs the property for evidence.'" United States v. Kriesel, 720 F.3d 1137, 1144 (9th Cir. 2013) (quoting United States v. Fitzen, 80 F.3d 387, 388 (9th Cir.1996) (citation omitted). "The government can rebut that presumption, however, by showing a continued need for the property that is reasonable under all of the circumstances," Kriesel, 720 F.3d at 1144, or by satisfying its "burden of showing that it has a . . . 'legitimate reason to retain the property.'" United States v. Kaczynski, 416 F.3d 971, 974 (9th Cir. 2005). See United States v. Harrell, 530 F.3d 1051, 1057 (9th Cir. 2008) (quoting United States v. Martinson, 809 F.2d 1364, 1369 (9th Cir. 1987)) ("when the property in question is no longer needed for evidentiary purposes . . . the burden of proof changes . . . and the government has the burden of demonstrating that it has a legitimate reason to retain the property").

Here, while Movant is not a defendant in a criminal case, a similar logic applies. Movant seeks only the reproduction rather than the return of the seized documents, which would not deprive the United States of the evidence. Ordinarily, this would presumptively require that the documents be reproduced.

### 2. The Scope of Section 6103

As mentioned *supra*, the United States' primary argument against the motion is that, absent Scully's consent, it is prohibited by 26 U.S.C.§ 6103 from disclosing this information to the Movant. Opp., at 4:11-5:18.[2] This statute provides that "returns and return information shall be confidential," and except where authorized under the Internal Revenue Code, "no officer or employee of the United States . . . .shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section." 26 U.S.C. § 6103(a).

"The legislative history of section 6103 indicates Congress's overriding purpose was to curtail loose disclosure practices by the IRS." Stokwitz v. United States, 831 F.2d 893, 894 (9th Cir. 1987). "Congress was concerned that IRS had become a 'lending library' to other government agencies of tax information filed with the IRS, and feared the public's confidence in the privacy of returns filed with IRS would suffer." Id. (citing 122 Cong.Rec. 24013 (1976) (remarks of Sen. Weicker)). "At the same time, Congress realized tax information on file with the IRS was often important to other government agencies." Stokowitz, 831 F.2d. at 895. "Revised section 6103 represents a legislative balancing of the right of taxpayers to the privacy of tax information in the hands of the IRS and the legitimate needs of others for access to that information." Id. "[T]he statutory definitions of 'return' and 'return information' to which the entire statute relates, confine the statute's coverage to information that is passed through the IRS," but "[t]hat is as far as the statute goes." Id. at 895-96.

It seems unlikely that all of the material at issue here constitutes "return[s]." A "return" means "any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including

---

[2] The United States states in its opposition that "[s]hould Scully sign a written consent allowing the IRS to disclose the information seized from his home to be turned over to Gourmet Express, there is no legal authority authorizing the disclosure." Opp., at 5:17-18. The Court assumes that the United States means to say that, *absent* Scully signing such a written consent, there is no legal authority authorizing the disclosure.

supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed." 26 U.S.C. § 6103(b)(1). The warrant sought Scully's returns, but it also sought Gourmet Express' tax returns, as well as documents other than tax returns which related to Gourmet Express' business. At least some of the information sought was probably not "filed with the Secretary" by Scully, and in any case the United States does not demonstrate that all of it was.

The question of whether the material constituted a "return" appears to turn on the scope of 6103's definition of "return information." The term means:

> **(A)** a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense,
>
> **(B)** any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b)) which is not open to public inspection under section 6110,
>
> **(C)** any advance pricing agreement entered into by a taxpayer and the Secretary and any background information related to such agreement or any application for an advance pricing agreement, and
>
> **(D)** any agreement under section 7121, and any similar agreement, and any background information related to such an agreement or request for such an agreement,
>
> but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer. Nothing in the preceding sentence, or in any other provision of law, shall be construed to require the disclosure of standards used or to be used for the selection of returns for examination, or data used or to be used for determining such standards, if the Secretary determines that such disclosure will seriously impair assessment, collection, or enforcement under the internal revenue laws.

26 U.S.C. § 6103(b)(2).

### 3. Is It Apparent From The Face Of The Motion That All Of The Information Sought Is "Return Information"?

The United States has provided no declaration or any other competent evidence in support

7

of its counsel's contention that all of the property qualifies as non-disclosable "return" or "return information." In its opposition, the United States states that "the term 'return information' is broad and includes any information gathered by the IRS with regard to a taxpayer's liability under Title 26," and also submits that the definition extends to records seized in criminal investigations. However, the authority it has cited (all of which is either out-of-circuit or from other district courts) does not clearly encompass this situation.

In Hull v. I.R.S., the court noted that "[t]he statutory definition [of 'return information'] 'plainly reaches far beyond' information that 'relates to an actual tax return.'" 656 F.3d 1174, 1186 (10th Cir. 2011) (quoting Landmark Legal Foundation v. I.R.S., 267 F.3d 1132, 1136 (D.C. Cir. 2001)). It also held that in the circumstances of that case, the I.R.S. met its burden of establishing that all of the information qualified as 'return information' by persuasively explaining that "it can tell just by reading Plaintiffs' FOIA request that every document responsive to their request constitutes return information." Hull, 656 F.3d at 1187. But in Hull, the information directly related to information submitted by a taxpayer to the I.R.S. in a compliance analysis, rather than information seized in a criminal investigation.

In LaRouche v. U.S. Dep't of Treasury, 112 F. Supp. 2d 48, 54 (D.D.C. 2000), the I.R.S. withheld one page of a document after specifically identifying to the court that it "pertain[ed] to the service of a subpoena with respect to a grand jury investigation" of a taxpayer. This information was not subject to a blanket nondisclosure claim; it was specifically identified as nondisclosable because it provided "a taxpayer's identity." 26 U.S.C. § 6103(2)(A).

Finally, in O'Connor v. I.R.S., the court held that the I.R.S. could not disclose "reports of assaults, threatened assaults and harassment of I.R.S employees by taxpayers," because such attempted interference with revenue collection violates the Internal Revenue Code, and the reports were information collected by the I.R.S. for the purpose of investigating these potential violations. 698 F. Supp. 204, 206 (D. Nev. 1988). Again, however, the information subject to nondisclosure was identified by the I.R.S. with particularity.

None of the cases cited by the United States stand for the proposition that the I.R.S. may refuse to disclose all material seized in a criminal tax investigation without competent evidence attesting with particularity that the specific information sought qualifies under Section 6103.

Neither has the United States offered any authoritative agency interpretation of Section 6103's reach.³

Other leading cases of which this Court is aware do encompass a broad reading of "return information." See Aloe Vera of Am., Inc. v. United States, 699 F.3d 1153, 1156 (9th Cir. 2012) (quoting Mallas v. United States, 993 F.2d 1111, 1118 (4th Cir. 1993) ("Taxpayer information obtained or prepared by the IRS ... is 'return information' regardless of the person with respect to whom it was obtained or prepared"); Long v. I.R.S., 891 F.2d 222, 223 (9th Cir. 1989) (information containing "the taxpayer's identity, financial information reported on his taxes, and possibly other information regarding audits" . . . "fit[s] within the broad definition of "'return information.'"); Church of Scientology of California v. I.R.S., 484 U.S. 9, 14 (1987) ("[w]e are told by the IRS that, as a practical matter, 'return information' might include the report of an audit examination, internal IRS correspondence concerning a taxpayer's claim, or a notice of deficiency issued by the IRS proposing an increase in the taxpayer's assessment").

However, the Court is unaware of any Ninth Circuit or Supreme Court authority which specifically addresses the question of whether all information acquired by the I.R.S. in a criminal investigation automatically becomes "return information." See also Wiener v. F.B.I., 943 F.2d 972, 982 (9th Cir. 1991) ("[r]easonable people could differ as to [the] interpretation" of Section 6103's definition of "return information"). "Courts have interpreted 'return information' broadly to include audit reports and correspondence between the Service and the taxpayer," but "[o]n the other hand, information concerning the taxpayer that was generated by a grand jury, and not the Service, has been held not to be return information, even though it passed through the hands of Service agents." 13 Mertens Law of Fed. Income Tax'n § 47:158 (citing Baskin v. United States,

---

³ In the 2001 Landmark decision, 267 F.3d at 1135-36 (internal citations altered), the D.C. Circuit wrote: "We would owe deference to the IRS's interpretation of § 6103 under Chevron v. N.R.D.C., if the Service had reached the interpretation asserted here in a notice-and-comment rulemaking, a formal agency adjudication, or in some other procedure meeting the prerequisites for Chevron deference stated in United States v. Mead. But the Service makes no claim that the interpretation it developed in litigation here arose in any such procedure. Accordingly, we can give its views no more than the weight derived from their 'power to persuade.'" If the I.R.S. has subsequently adopted a formal agency interpretation of the statute, the United States has not cited it to this Court.

9

135 F.3d 338, 343-44 (5th Cir. 1998).  See also Calder v. I.R.S., 890 F.2d 781, 782 (5th Cir. 1989) (noting the I.R.S.' position that it would not disclose documents pertaining to tax investigations of Al Capone, and upholding that policy against First Amendment challenge).

On a straightforward textual reading of the statute, it could be argued that all of the material collected in the search is "return information" by definition, simply by virtue of the fact that it is "data . . . collected by the Secretary . . . with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense."  26 U.S.C. § 6103(b)(2)(A). That is to say, one could argue that all of the material seized is "return information" by definition, because it was collected by the I.R.S. with respect to its investigation into Scully's criminal tax liability.[4]

However, the Court does not understand the United States to be taking this position.  At oral argument, in response to a hypothetical posed by the Court, counsel appeared to concede that if certain material had been collected which was beyond the scope of the warrant, at least that material would not qualify as "return information," and therefore would not be subject to a non-disclosure requirement.  This would mean that the question of what constitutes "return information" is a question that cannot be determined from the face of the motion, but must instead must be determined as a factual matter from the features of the individual documents.

If the United States does not argue that all material collected by the I.R.S. in a criminal tax investigation is automatically "return information," then the Court must then consider whether the United States has demonstrated as a factual matter that all of the material requested is "return

---

[4] At oral argument, counsel for Movant noted that Section 6103 contains a provision stating that "[r]eturn information . . . does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer."  26 U.S.C. § 6103(b)(2).  This proviso, known as the "Haskell Amendment," was discussed at length by the Supreme Court in Church of Scientology of Calif. v. I.R.S., 484 U.S. 9 (1987).  While the facts of that case were distinct from this one, the Supreme Court specifically rejected the argument "that the Haskell Amendment removes from the classification of 'return information' all data which do not identify a particular taxpayer."  Id. at 14.  See also Church of Scientology of Calif. v. I.R.S., 792 F.2d 153, 155-63 (D.C. Cir. 1986) (en banc) aff'd, 484 U.S. 9; Long v. I.R.S., 891 F.2d 222, 224 (9th Cir. 1989); Long v. I.R.S., 395 Fed. App'x. 472, 475 (9th Cir. 2010) (unpublished).

information."

#### 4. Burden of Proving that the Information Requested is Protected

Citing D.C. Circuit and Seventh Circuit precedent, Merten's counsels that "[w]here a trial court must determine whether information requested in discovery is exempt as 'return information,' the Court cannot accept the Government's statement that the information is exempt, but must demand proof that documents are protected under Section 6103." 13 Mertens Law of Fed. Income Tax'n § 47:15. "Such proof would come in the form of affidavits from Service personnel and indices of documents covered; if necessary, the Court can conduct an in-camera inspection." Id. (citing Church of Scientology of California v. I.R.S., 792 F.2d 153 (D.C. Cir. 1986) (en banc) (maj. op. of Scalia, J.), aff'd, 484 U.S. 9 (1987) and King v. I.R.S., 688 F.2d 488 (7th Cir. 1982)).

The Court has identified no cases specifically discussing the placement of the burden of proof in a 41(g) motion arising outside of the specific context of a criminal trial. However, as discussed at II-B-1, *supra*, when a criminal defendant makes a 41(g) motion and the Hamsden factors favor the court's assumption of jurisdiction, the burden is on the government to justify its decision not to return the information. Similarly, in determining whether the I.R.S. had met its burden of demonstrating that information was exempt under FOIA, the Ninth Circuit has insisted on affidavits from agents who had actually reviewed the documents, rather than affidavits that were merely 'conclusory and generalized allegations.'" Kamman v. I.R.S., 56 F.3d 46, 49 (9th Cir. 1995) (quoting Church of Scientology v. U.S. Dep't of Army, 611 F.2d 738, 742 (9th Cir. 1979)).

In this case, the United States has submitted no affidavits or competent evidence of any kind that demonstrate that the materials qualify as 'return information.' If a document's status as 'return information' is contingent on certain facts not known from the motion itself, the government must do more. It is not even clear that any I.R.S. official has even reviewed the material and determined which documents qualify as 'return information,' and why. While this case is not a FOIA case, the burden is similarly on the government to justify its decision not to disclose. See Harrell, 530 F.3d at 1057. The government has not met that burden.

11

## IV.     CONCLUSION

The court ORDERS the United States to reproduce the property requested in the motion not later than 14 days from the date of this order.  However, the United States has leave to file, not more than five days from the date of this order, a motion to stay enforcement of this order that is accompanied by a memorandum of points and authorities supporting the argument that all of the information requested is protected from disclosure under Section 6103, and that this fact can be determined from the face of the motion itself.  If such a memorandum is filed, Movant may then file any response not more than five days from the date that the United States' submission is filed. If no motion to stay is filed, the United States must reproduce the property within 14 days.

**IT IS SO ORDERED.**

Dated:  October 9, 2013

_____
JON S. TIGAR
United States District Judge